36 514
117 32
36 514
120 427
36 514.
159 328

JOSIAH THORNBURG, Plaintiff in Error, *v.* CHAS. JONES AND JAMES M. MING, Defendants in Error.

*Action—Deed of Trust—Power.*—A. sued the trustee in a deed of trust, and the holder of the notes thereby secured, alleging in his petition that by the power notice of the sale was to be given by advertisement inserted in newspapers printed in St. Louis *and* Franklin counties, and that notice was only published in Franklin county; and alleging also, that, by the wrongful, oppressive and fraudulent conduct of the holder of the notes, in combination

Thornburg v. Jones et al.

with the trustee, bidders were deterred from bidding, the property was sacrificed, and brought less than parties were ready and willing to bid for it: *Held*, that as by the petition it appeared that the sale was void both in law and equity, no action at law for damages could be sustained.

## Error to St. Louis Court of Common Pleas.

The petition stated that on the 25th day of April, 1859, Hickman and Moore were seized in fee of certain tracts of land situate in the county of Franklin, &c.; and being so seized, Hickman and Moore, by deed of trust, conveyed the said real estate to Ming, as trustee, to secure the payment of four notes, executed by Hickman and Moore, dated April 15, 1859, each for the sum of fifteen hundred dollars, and payable to the order of one James W. Wilson, at the Bank of the State of Missouri, in St. Louis; one of said notes being due twelve months after date, one due two years after date, one due three years after date, and the other due four years after date. It was provided in the deed of trust, that if the notes, or either of them, should not be paid at maturity, then the said Ming, or his legal representatives, or, in case of death or absence from the State, the sheriff of the county, might proceed to sell the said property, or any part thereof, at public vendue to the highest bidder, at Union, in Franklin county, for cash, first giving thirty days' public notice of the time, terms and place of sale, and of the property to be sold, by advertisement in some newspaper printed in St. Louis and Franklin county; and upon such sale shall execute and deliver a deed in fee simple of the property sold to the purchaser or purchasers thereof. That in March, 1860, Hickman and Moore sold and conveyed the said real estate to plaintiff, subject to said deed of trust; that the said Hickman and Moore, in the year 1859, paid in full the said note due one year after date, and also paid three hundred and ten dollars on said note due two years after date, and which amount was credited on said note as paid on the 15th of April, 1859; and that after the said payment Wilson sold the three notes— one due two years after date, one due three years after date, and the other due four years after date—to Charles Jones, for

value received; that on or about the 11th day of October, 1860, the said Ming, at the instance of the said Jones, the owner and holder of said notes, caused an advertisement to be published in some newspaper, the name of which is unknown to plaintiff, printed and published in Franklin county, that he would on the 28th November, 1861, in the town of Union in said county of Franklin, proceed to sell the said real estate for the purposes mentioned in said deed of trust; that on the 28th day of November, 1861, the said Ming exposed the said real estate in a lump, or as a whole, for sale at public vendue in said town of Union, and the same was purchased by the said Jones, at the price and sum of twenty-seven hundred dollars; that the said advertisement was not inserted or printed in any newspaper, or published in St. Louis. That at the time of said sale the said real estate was worth ten thousand dollars; that the makers of said notes, and the endorser thereof, are all good for the said amount of said notes, and are solvent and able to pay the said notes. That the said defendants maliciously combined and confederated together to prevent persons from bidding at said sale, in order to buy the said real estate at as low price as possible; that said defendants, in the said advertisement, recited that the sum of fifteen hundred dollars and interest was due on said note, when in fact there was only eleven hundred and ninety dollars and interest as aforesaid. And the said Ming and Jones, combining and confederating for the purpose and with the intent of defrauding, oppressing and overreaching plaintiff by sacrificing his said property, and getting it at a greatly and grossly inadequate and reduced price, put up said property for sale as aforesaid, and while said sale was being cried by public vendue, the said Ming, at the instance and under the direction of said Jones, and in combination and confederating with him, with the intent and for the purpose aforesaid, publicly proclaimed and made known to all the bidders and persons then present at said sale, that whoever purchased said real estate would be required to pay the whole amount of the bid, and the purchase money of said land,

in gold, immediately upon the said land being knocked down to him, and before any deed was made or could be made. And there were then and present at said sale. bidders, who had been bidding for said land at said sale when the said proclamation was made and wished to purchase the same, who stated to defendants that they had gold coin to pay for said land if they purchased it; but that the coin was not then present at the place of sale, but would be ready to be paid over to said Ming as soon as he was prepared to execute and deliver a deed for the land.

Whereupon said Jones proclaimed and stated in the hearing of said bidders at said sale, that he would not trust Jesus Christ, and that the gold would be required immediately upon the bidding off or knocking down of said land at said sale. And the said Ming went on crying the said sale of said land, after the statement and proclamation aforesaid, under the influence and agreeably to the terms of said statement and proclamation ; and thereupon and by means thereof the various bidders upon said land then present, and who had been bidding upon said land before said statement and proclamation, as well as other persons then and there present, became and were overawed and frightened, and failed to bid further upon said land ; by reason thereof the said land was bid off and purchased by said Jones, at the grossly inadequate sum of twenty-seven hundred dollars for the whole of said land, which was reasonably worth at the time of said sale the sum of ten thousand dollars ; and that said land at said sale, but for the fraudulent combination and interest of the defendants, and the outrageous manner in which they conducted the sale, and the violent declarations and state-. ments made by said Jones as aforesaid, and the unlawful, unfair, oppressive and fraudulent manner in which said sale was effected and conducted, would have brought the sum of $4,500; and if the said sale had been fairly conducted and made, the said land would have brought the sum of $4,500; that in the manner and form aforesaid, and by the means aforesaid, the defendants have wilfully, maliciously, and fraudu-

lently overreached and defrauded the plaintiff out of and sacrificed his said land as aforesaid, and has fraudulently converted the same to the use of him the said Jones; whereby the said plaintiff has been damaged in the sum of seven thousand five hundred dollars, for which, with his costs, he prays judgment.

The defendants demurred to the amended petition, for the reasons—

1. That plaintiff asks for judgment against the defendant Jones for a sum of money, whereas by the statement in the petition, if true, it is shown that no valid sale of the premises therein mentioned was made.

2. By the statements in said petition the said plaintiff states, there is unpaid upon the notes mentioned in the petition, as avowed by defendant Jones, more than forty-five hundred dollars; but plaintiff makes no offer to pay said notes, or any part of them.

3. Because it is shown and averred in and by said amended petition, that the value of the land is not so great as the amount admitted in said petition to be unpaid.

4. Because the facts as shown in said petition prove no fraud or combination, or in any manner invalidate the sale.

The court sustained the demurrer, and the plaintiff appealed.

*Whittelsey* and *Hamilton*, for plaintiff in error.

I. As the trustee Ming had the legal title in the land, he could convey that title, and although the sale might have been set aside by a court of equity on account of the wrong conduct of the trustee and his *cestui qui trust*, that would not prevent the plaintiff from suing for the damages sustained by him, caused by the misconduct of the defendants.

Such suit was sustained in the case of Dozier v. Jermain, 30 Mo. 216. See also Howard v. Ames, 3 Metc. Mass. 308; Lowell v. North, 4 Minn. 32.

That the trustee can convey the legal title—4 Kent's Com. 310; Gale v. Mensing, 20 Mo. 461; Slevin v. Brown,

32 Mo. 176; Wilcox v. McKinney, 10 Mo. 229; Clark v. Maguire, 16 Mo. 302; Miles v. Davis, 19 Mo. 408; Gibbons v. Gentry, 20 Mo. 468; Richardson v. Means, 22 Mo. 495; Thompson v. Lyons, 33 Mo. 219.

A judgment for plaintiff for damages would bar a suit in equity to set aside the sale.

II. The defendants' third point of demurrer is based upon a misconception of the facts stated in the petition. The value of the land is stated to be ten thousand dollars, more than twice the amount due at the date of the sale. It is alleged that there were persons present ready to bid four thousand five hundred dollars for the property, which defendant Jones purchased for $2,700.

III. The plaintiff suing for damages, was not bound to tender the amount secured by the deed of trust.

A mortgagee filing a bill to redeem, is not compelled to make a tender of the debt. (Quin v. Brittain et al., 1 Hoff. Ch. 355; Ulrici v. Papin. 11 Mo. 42.) Plaintiff was not bound to tender the debt. (Stebbins v. Hall, 29 Bark. 555.)

IV. The petition shows a good cause of action. The conduct of Jones, the *cestui qui trust,* was oppressive and unjust. The trustee Ming should have stood indifferent between the debtor and creditor, and have secured as high a price as possible.

To demand coin *instanter* was a gross fraud upon the debtor and the plaintiff, more especially under the well known condition of public affairs at the time.

To demand specie *instanter*, at a mortgage sale, is held oppressive, and sale set aside. (Goldsmith v. Osborne, 1 Edw. Ch. 562.) As to conduct of sales, see Conway v. Nolte, 11 Mo. 74; Stine v. Wilkson, 10 Mo. 75; commenting upon the conduct of trustees' sales. (11 Am. L. Reg. 712, § 20.)

The action of the defendants at the sale was a fraud upon the rights of the debtor and of the owner of the equity of redemption. The trustee should not have acted upon the direction of the *cestui qui trust,* but should have considered the interests of the plaintiff and of the debtor.

*Glover & Shepley*, for defendants in error.

I. By the petition it clearly appears that the trustee did not comply with the terms by which he alone was authorized to sell and convey, and thereby Jones acquired no title to the land.

II. It is apparent from the statements of the petition that there remains unpaid more than $4,500 upon the notes secured by the deed of trust, subject to which he took the deed, and he is asking for damages for the sale of the land to its full value, without offering to pay what is unpaid.

If the petition is true, the land is worth enough or nearly enough to pay the entire debt; so that, if the sale is set aside, Jones, the holder of the notes, has security upon the land sufficient to pay his whole debt; but the plaintiff does not desire to have it set aside, but to recover damages of Jones and Ming—damages for the difference between what it brought at the sale and what he says was the value; and when he recovers this from Jones, leaves Jones to sue Hickman and Moore, and they can then set up these same facts, if they exist, as a defence to a suit on these notes.

III. As it is stated that the land was security for the whole debt, as far as the purchaser, Thornburg, is concerned, there could no possible damage come to him unless the value of the land was greater than the debt. If the land brought less than the debt, it might have been the misfortune of the *cestui qui trust;* but if the value was not greater than the debt, the whole land must be absorbed in paying the debt, and there can be no residue for the owner; therefore he cannot be damnified by any possibility.

IV. If the statements of the petition made any case at all for equitable interference or legal remedy, they make simply a case for setting aside a fraudulent sale; and in doing this, the plaintiff, if he seeks equity, must do equity; and if he asks to get back his land, must pay the debt for which it is liable.

V. The petition shows no fraud, combination, or act, which entitles the plaintiff to any damages. Of course, the

mere fact that, according to the averments of petition, the notice of sale was not properly published, is no fraud; at most it can only affect our title, and that we can take care of. As to the other averments, they are: .

1. That the defendant demanded gold. As this was before the legal tender act, and everybody else demanded gold, it is not clear what that has to do with the charge of fraudulent combination; and,

2. That the defendant proclaimed that the amount of the purchase money must be paid at once. As this is a very common proclamation at trustees' sales, especially where it is suspected that parties are bidding whose purpose is to postpone the sale by not complying with their purchase, it is not perceived that there is anything in this that is fraudulent.

HOLMES, Judge, delivered the opinion of the court.

The petition appears to be an action at law to recover damages. It is not framed as a bill for equitable relief, and contains no prayer for relief in equity. Most of the cases cited in support of it are cases in equity, and have no proper application to the points raised here on demurrer. The petition shows no cause of action at law. According to the allegations made in it, the sale by the trustee was not made in conformity with the power to sell which was given in the deed of trust, and was utterly void. (Stine v. Wilkson, 10 Mo. 75.) The deed of trust being duly recorded was notice to all the world, and to this purchaser especially, and he was bound to see that the sale was made in pursuance of the power given, and in conformity with the trust declared. His deed is not merely voidable in equity, but void at law, upon the facts shown. The case of Dozier v. Jerman, (30 Mo. 216,) on which the plaintiff relies, contains nothing to the purpose here. That action was grounded upon a breach of contract, or a violation of an express agreement between the plaintiff and the defendant, for which damages were claimed. The party had agreed with the plaintiff, who was unable to pay the note when due, to give an extension of six

months' time, but, in violation of his agreement, had directed the trustee to proceed and sell under the deed of trust; the sale was made in conformity with the trust and the power given therein, and, the other party being absent at the time, the property was sold at a sacrifice. There was no question but that the sale was entirely valid, and conveyed the property absolutely to the purchaser. The case is not at all in point here; and no case has been cited on behalf of the plaintiff that has any direct application to the questions raised on this demurrer.

The case of Norman v. Hill (2 Patt. & Heath, 676) was a bill in equity, and distinctly recognized the principles here laid down. It was a question of setting aside a deed for irregularity and unfairness in the sale; and it was held that the purchaser, having notice, takes the risk of any irregularity or unfairness in the sale, in a court of equity. Where there has been a complete execution of the power, and all essential conditions have been complied with, but there has been some irregularity, unfairness, fraud, or a mere breach of trust, there will doubtless be an adequate remedy in a court of equity, on a bill to set aside the sale and to have the deed declared void; and where the power has not been executed, or not in accordance with essential conditions, the sale and deed will be held to be utterly void, both at law and in equity. The suits at law which are referred to in that case appear to have been cases where there was some breach of trust only, and where the execution of the power to sell was such as to pass the legal title to the purchaser. So, also, in Barksdale v. Finney, (14 Gratt. 348,) which was a bill in equity. (3 White & Tud. Lead. Cas. in Eq., 498.)

Such is not the case here; and we know of no principle or authority on which a suit of this kind can be maintained for damages at law. We think the demurrer well taken.

Judgment affirmed. Judge Wagner concurs; Judge Lovelace absent.