HENRY R. MOORE & others *vs.* ALEXANDER W. DICK.

Essex. November 3, 1904. — January 5, 1905.

Present: KNOWLTON, C. J., LATHROP, BARKER, HAMMOND, & LORING, JJ.

*Equity Pleading and Practice*, Master's report. *Mortgage*, Of real estate, foreclosure. *Equity Jurisdiction*, Laches.

Where the rule to a master directs him "to hear the parties and their evidence and report his findings of fact and law to the court," he is not bound to report the evidence, and if one of the parties wishes to compel him to do so, that party must move in court that the master be required to report the whole evidence or such part of it as is desired. Such a motion properly should be made before the hearing before the master is closed, and when made after the hearing has been

closed and a draft of the master's report has been shown, such a motion by the losing party is not looked upon with favor.

An advertisement of a sale of real estate under a power of sale in a mortgage, which, instead of being published in a certain weekly newspaper named in the power of sale, is published in a daily newspaper of another name printed by the same proprietors and issued from the same office, is not published in compliance with the requirements of the power, and an attempted foreclosure sale in pursuance of such an advertisement is void.

Where a mortgagee of real estate has made an attempted foreclosure under a power of sale in the mortgage, which is void because the sale was not advertised in accordance with the terms of the power, and the mortgagee takes possession of the land and continues in possession in good faith supposing the sale to have been valid, the mortgagor, who never has been deprived of the legal title to the land, may maintain a bill in equity to redeem it from the mortgage at any time within twenty years, and no delay on his part within the period of limitation can be accounted laches.

BILL IN EQUITY, filed July 14, 1902, by the children and heirs at law of Henry Moore, deceased, to redeem certain land in Lynn from two mortgages made by Henry Moore in his lifetime.

In the Superior Court the case was referred to Henry Wardwell, Esquire, as master, by an order quoted in the opinion. The master found for the plaintiffs, and refused the defendant's requests in regard to reporting the evidence as stated in the opinion. *Stevens*, J. denied a motion of the defendant to order the master to report the evidence, the defendant appealing from this order, as stated in the opinion. The judge then heard the case upon the master's report and the defendant's objections and exceptions thereto, and made the following decree: "that the exceptions to the master's report be and the same are hereby overruled; the master's report is confirmed and it is further adjudged that the plaintiffs have a right to redeem and that they may redeem the real estate described in the plaintiffs' bill upon the payment to the defendant of the sum of $2,453.44, being the amount found to be due to the defendant by the master, within sixty days from the entry of this decree and the further payment of interest on said amount from October 29, 1903, to the date of payment, at six per cent per annum; and upon the payment of such sum the defendant shall execute and deliver to the plaintiffs a deed, conveying to them all right, title and interest in said real estate which he acquired under and by virtue of the deed from James Pool, said deed being dated December 18, 1892, and being recorded in Essex South District Registry of

Deeds, Book 1342,. Folio 589, free and clear from any and all incumbrances placed thereon by said Dick, whether by way of purchase money, mortgage or otherwise; and the defendant shall further execute and deliver to the plaintiffs an assignment of all right, title or interest that he may have in and to the said real estate under the two mortgages from Henry Moore to Philemon R. Russell, dated respectively October 10, 1873, and November 1, 1873, and recorded in the Essex South District Registry of Deeds, on October 16, 1873, and November 6, 1873, respectively."

The defendant appealed.

*G. L. Mayberry & W. M. Morgan,* for the defendant.

*W. H. Niles, F. D. Allen & W. L. Van Kleeck,* for the plaintiffs.

HAMMOND, J.   This is a bill to redeem land from two mortgages given by Henry Moore, the father of the plaintiffs.   The bill is resisted upon two grounds, the first of which is that the first mortgage has been duly foreclosed by sale under the power therein contained, and the second that if the foreclosure was imperfect by reason of any defect in the proceedings the plaintiffs are barred by laches.

After the hearing before the master had closed and a draft of the report had been shown, the defendant requested the master to annex to the report a copy of the evidence bearing upon several findings.   The master refused to comply with such requests, and the defendant duly excepted.   Subsequently the defendant moved that the judge order the master to report all the material evidence bearing upon his exceptions, alleging that the judge could not properly dispose of them without such a report.   The motion was overruled, and the defendant appealed.

The rule to the master directed him " to hear the parties and their evidence and report his findings of fact and law to the court."   Under this rule he was not bound to report the evidence.   It was open to either party during the hearing before him to move in court that he be required to report the whole testimony or any part of it, if, in the progress of the hearing, either party considered that such a course was necessary or desirable. This was not done.   " For the losing party to come in, for the first time, after the hearing before the master is closed and his draft report is known, and ask for a report of the evidence, is a

proceeding never looked upon with favor," (*Parker* v. *Nickerson*, 137 Mass. 487, 493,) and we are not satisfied, from an examination of this report, or from anything before us, that justice requires that the exceptions so far as based upon the refusal of the master to comply with these requests should be sustained, or that the motion made to the judge about the same matter should have been granted. We proceed therefore with the examination of the case as presented by the master's report.

The validity of the foreclosure proceedings taken in 1883 by one Fairchild, then the holder of both mortgages, is attacked solely upon the ground that the notice of sale was not inserted in the paper designated in the power. As to this the master finds as follows: " The power of sale in the first mortgage provides that the notice of sale shall be published in ' the Reporter Newspaper printed in the County of Essex aforesaid.' At the date of this mortgage, October 10, 1873, there was published in Lynn a newspaper which had as its name at the top of the first page, ' Lynn Semi-Weekly Reporter.' This paper had been published in Lynn since 1854. Its publication was continued till 1880, when it passed into the hands of new owners, who then began the publication from the same office of two newspapers, a daily whose title was the ' Lynn Daily Bee,' and a weekly entitled ' The Lynn Reporter.' They continued to publish the latter under the same name till 1889.

" Neither in 1873 nor in 1883, was there any other newspaper printed in the County of Essex whose name contained the word ' Reporter.'

" Both the ' Lynn Semi-Weekly Reporter' and ' The Lynn Reporter,' during the whole of their existence were commonly known in Lynn by the name of ' The Reporter.' In 1873 it was what is ordinarily spoken of as a family paper and was the leading paper of that kind in Lynn. It had a good circulation, with many regular subscribers. It contained a summary of the news, with stories and other matters of literary interest, and was in common use for advertising legal notices. It was taken regularly, and read, by the plaintiffs and their father during its whole existence from 1854 to 1889, and was sent to those of the plaintiffs who were away from Lynn. The publication of a daily paper by the same owners after 1880 had the tendency to

diminish the circulation of the weekly. This effect was not at once very great, but increased gradually till in 1889 it was such that the publication then was stopped.

"I find that 'The Lynn Reporter' was substantially a con-tinuation of the 'Lynn Semi-Weekly Reporter,' and that they both answered the description of 'The Reporter Newspaper printed in the County of Essex.' The 'Lynn Daily Bee,' or the 'Lynn Bee,' as it is called in the Fairchild's affidavit, was in no sense 'The Reporter Newspaper' mentioned in the power. The newspaper designated in the power of sale I find was 'Lynn Semi-Weekly Reporter,' commonly known as 'The Reporter.' I find that this was the newspaper the mortgagor and mortgagee had in mind when the mortgage was given.

"It is probable that if the notice had been published in the Reporter the plaintiffs would have known of the sale. The pub-lication of the notice of sale in the 'Lynn Bee,' was not such a publication as was required by the terms of the power of sale. A publication in the Lynn Reporter would have been so.

"I find therefore that in this respect Fairchild, the assignee of the mortgage, did not comply with the conditions annexed to the power of sale in the mortgage. It did not appear that there was a failure to comply with the terms of the power in any other respect than that above mentioned."

The question is a narrow one and not free from difficulty, but after a careful consideration of the circumstances, which are somewhat minutely detailed in the report, we are of opinion that they justify the general finding that the newspaper designated in the power of sale was the "Lynn Semi-Weekly Reporter," com-monly known as the "Reporter," and that its identity under a change of name was substantially continued in the "Lynn Re-porter" and not in the "Lynn Daily Bee." It is plain that the weekly paper in its general character, and presumably in the kind of its patronage, much more nearly resembled the one named in the power than the daily did. The finding of the master upon this matter therefore must stand.

It is familiar law that one who sells under a power must follow strictly its terms. If he fails to do so there is no valid execution of the power and the sale is wholly void. *Bigler* v. *Waller*, 14 Wall. 297. *Shillaber* v. *Robinson*, 97 U. S. 68. *Roarty* v. *Mitch-*

*ell,* 7 Gray, 243. *Thornburg* v. *Jones,* 36 Mo. 514. In *Smith* v. *Provin,* 4 Allen, 516, where the power required that an affidavit of the proceedings should be made and recorded in the registry of deeds within one year after the sale, the same principle was recognized and applied, and, it appearing that no such affidavit had been made and filed for record until nearly three years had expired, the sale was treated as a nullity. The manner in which the notice of the proposed sale shall be given is one of the important terms of the power, and a strict compliance with it is essential to the valid exercise of the power. It follows that the sale was not valid. The case stands as though there had been no attempt to foreclose, and the right of redemption is still outstanding.

It is strongly urged by the defendant that the plaintiffs are barred by laches. It is said that they knew or ought to have known of these foreclosure proceedings, and that they have slept on their rights so long that they have no claim in equity to relief. But this idea is founded upon a misconception of the case. There is here no question of laches. This is not a case where there has been a literal compliance with the power so that the legal title to the land passed to the purchaser, but for some reason as, for instance, a failure to act with due fidelity to the trust imposed by the power, there are equitable reasons why the sale should be set aside. In such a case the sale, being in law valid, is voidable only in equity, and the owner of the right to redeem must apply for relief in equity within a reasonable time. In the present case there has been no valid sale in law, and the title to the land subject to the mortgages has not passed from the plaintiffs. They are still the owners of the fee. They come into court with a legal right to redeem, a right which never has been impaired by foreclosure proceedings either under the power, or by a formal entry for possession. This right to redeem may be enforced by a bill in equity, and mere delay, provided it does not extend beyond the statute of limitations, is no bar, and that is so whether or not anything is paid upon the mortgage debt. *Ayres* v. *Waite,* 10 Cush. 72. A purchaser under a power of sale must see to it at his peril that there has been a compliance with the legal and essential terms of the power. If there has not been, then he is not protected whether acting in good faith or not. In

the present case the record disclosed through the mortgage the name of the newspaper in which the notice was to appear.

The right to redeem is not barred until after the mortgagee has held possession adversely for at least twenty years. *Ayres* v. *Waite, ubi supra.* No such adverse possession appears prior to the foreclosure proceedings in 1883, and the bill was filed July 14, 1902. The conclusion to which we have come upon these questions makes it unnecessary to consider further in detail the defendant's exceptions to the report. The plaintiffs have the right to redeem.

We see no reasonable objection to the final decree. It does not appear that the defendant has made any attempt to convey any portion of the property, and in the absence of any such act on his part, and in view of the description of the land contained in the deed from Pool to him, the decree, so far as respects the form of the conveyances, seems to meet the precise features of the case more effectually than if it provided simply that the defendant should execute a discharge in the ordinary form ; and under the facts disclosed we do not see that it places the defendant in any worse position.

*Decree affirmed.*