NOTICE: All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports. If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

14-P-381                                            Appeals Court

WELLS FARGO BANK, N.A. vs. NANCY B. COOK & another.[1]

No. 14-P-381.

Suffolk.     January 7, 2015. - May 19, 2015.

Present: Kafker, Meade, & Maldonado, JJ.


Summary Process. Mortgage, Foreclosure, Acceleration clause.
    Real Property, Mortgage. Regulation. Practice, Civil,
    Summary judgment, Summary process.


    Summary Process. Complaint filed in the Boston Division of
the Housing Court Department on August 6, 2012.

    The case was heard by MaryLou Muirhead, J., on motions for
summary judgment.


    Julia E. Devanthery for the defendants.
    David E. Fialkow for the plaintiff.


    KAFKER, J. Nancy and Abena Cook appeal from the judgment

entered in favor of Wells Fargo Bank, N.A. (Wells Fargo), in its

postforeclosure summary process action against them in the

Boston Housing Court. The Cooks contend that the judge erred in

_____

    [1] Abena B. Cook.

granting summary judgment for Wells Fargo on its claim for possession because (1) the judge should have considered the United States Department of Housing and Urban Development (HUD) Handbook No. 4330.1 REV-5, Administration of Insured Home Mortgages (1994) (HUD Handbook), as interpretive guidance to discern the meaning of the HUD regulations incorporated into the mortgage, and (2) the August 12, 2008, meeting Wells Fargo held at Gillette Stadium for defaulting mortgagors did not satisfy the procedural or substantive requirements set out in the HUD regulations at 24 C.F.R. § 203.604(b) (2008), as the Gillette Stadium event was untimely and did not provide for a face-to-face meeting with a representative of the lender authorized to negotiate modification of payment provisions. We conclude that the HUD Handbook should have been considered, that the meeting was untimely, and most importantly, that there are material disputed facts regarding whether the meeting satisfied the substantive face-to-face meeting requirements of the HUD regulations. Therefore, we vacate the judgment of the Boston Housing Court in favor of Wells Fargo.[2]

---

[2] The Cooks also contend that the judge erred in allowing summary judgment in favor of Wells Fargo on the Cooks' counterclaim pursuant to G. L. c. 93A, because there are genuine disputes of material fact and the judge did not address the c. 93A claim in her decision. Given the factual disputes discussed below, we conclude that Wells Fargo's summary judgment motion should not have been granted as to the c. 93A

1. Background. The facts, construed in the light most favorable to the Cooks, are as follows. See DiPietro v. Sipex Corp., 69 Mass. App. Ct. 29, 30 (2007). In 1971, Nancy Cook purchased property at 38-40 Rosewood Street in Mattapan, and in 2006 became co-owner of the property with her daughter Abena Cook. In March, 2008, the Cooks refinanced the property with a loan from Fairfield Financial Mortgage Group, Inc. To secure the loan, the Cooks granted a mortgage, including a statutory power of sale, to Mortgage Electronic Registration Systems, Inc., as nominee for the lender. The Cooks also executed a promissory note (note) to the lender in the amount of $469,133. The Cooks' mortgage payments were due on the first day of each month and the lender could impose a late charge on payments not received in full by the fifteenth day of the month (the grace period). Because the Federal Housing Administration (FHA) insured the mortgage, HUD regulations were expressly incorporated into the mortgage as a limit on the mortgagee's right to accelerate the loan and foreclose on the property.

Paragraph 9(a) of the mortgage provides, "Lender may, except as limited by regulations issued by the [HUD] Secretary in the case of payment defaults, require immediate payment in full . . . ." Additionally, paragraph 9(d) of the mortgage

counterclaim. See Bank of Am., N.A. v. Rosa, 466 Mass. 613, 625 (2013).

states, "[i]n many circumstances [HUD] regulations . . . will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by [HUD regulations]" (emphasis supplied). As provided in the HUD regulations themselves, a "mortgagee must have a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting,[3] before three full monthly installments due on the mortgage are unpaid." 24 C.F.R. § 203.604(b).

Wells Fargo acquired servicing rights to the Cooks' mortgage on April 10, 2008. Thereafter, from June through August, 2008, the Cooks failed to remit their monthly mortgage payments of $2,775.10. On August 12, 2008, the Cooks attended a large event at Gillette Stadium in Foxborough.[4] After standing in line and receiving a ticket, the Cooks met with a Wells Fargo representative for approximately fifteen minutes. The Cooks contend that they brought $10,287.14 in cash to this meeting and attempted to cure their default by making a cash payment to the

---

[3] The alternative of "mak[ing] a reasonable effort to arrange" a face-to-face meeting is not at issue in this appeal.

[4] Wells Fargo asserts that it also held a face-to-face interview with the Cooks at a "Home Preservation Workshop" on August 24, 2011. The record on this meeting is disputed, however, and it cannot be relied on as a basis for summary judgment.

Wells Fargo representative, but the representative said he was not allowed to accept any payments at the event.[5] The representative also indicated that a letter would be sent to them regarding modification and payment of their loan. On August 15, 2008, the Cooks received a letter from Wells Fargo offering them a "Special Forbearance Agreement" (agreement), which they accepted. The agreement provided that once the Cooks paid in accordance with the payment schedule set out in the agreement, their loan would be "reviewed for a Loan Modification," and would be modified so long as there were no changes to their "income or financial situation."[6] The Cooks made the first three payments of $3,429.06 in accordance with the agreement and attempted to pay the same amount in December of 2008. Wells Fargo rejected their final payment under the

---

[5] Wells Fargo disputes this claim and states that it has no record of the Cooks' tender of any payment at the Gillette Stadium event. Wells Fargo also notes that aside from their own affidavits the Cooks have failed to present any evidence ("such as bank account records, income receipts, cancelled checks, or other information") to support this claim.

[6] The meaning of this provision, and the factual disputes surrounding its enforcement, require resolution to decide the c. 93A claim. Wells Fargo states that the Cooks were not offered a loan modification because their loan was not yet eligible under the FHA guidelines. Wells Fargo claims that instead it offered the Cooks a second special forbearance agreement. The Cooks deny ever receiving the second agreement proposal.

agreement, stating that the amount due was $5,000.[7]  Wells Fargo thereafter declared the loan in default, accelerated the payments due, and conducted a foreclosure sale.

On April 16, 2012, Wells Fargo purchased the property at the foreclosure auction.  Wells Fargo subsequently commenced a summary process action in the Boston Housing Court seeking to evict the Cooks.  The Cooks' answer, among other things, challenged the validity of Wells Fargo's title to the property and counterclaimed under G. L. c. 93A.  Both parties filed motions for summary judgment and, after a hearing, the judge allowed the motion of Wells Fargo and denied the Cooks' motion.  Judgment of summary process entered for Well Fargo, and the Cooks appeal.

2.  Discussion.  We review the judge's grant of summary judgment de novo, and construe the facts "in the light most favorable to the nonmovant[s], drawing all permissible inferences and resolving any disputes or conflicts in [their] favor."  DiPietro v. Sipex Corp., 69 Mass. App. Ct. at 30.  At the outset we note that a defendant in a summary process action subsequent to foreclosure may raise as an affirmative defense a title defect arising from the failure to foreclose in accordance with the terms of the mortgage.  "The purpose of summary process

---

[7] It is unclear how the $5,000 was calculated because the agreement lists this payment as $13,814.49.

is to enable the holder of the legal title to gain possession of premises wrongfully withheld. Right to possession must be shown and legal title may be put in issue. . . . Legal title is established in summary process by proof that the title was acquired strictly according to the power of sale provided in the mortgage; and that alone is subject to challenge." Bank of New York v. Bailey, 460 Mass. 327, 333 (2011), quoting from Wayne Inv. Corp. v. Abbott, 350 Mass. 775, 775 (1966). "Failure to comply strictly with the power of sale renders the foreclosure sale void." U.S. Bank Natl. Assn. v. Schumacher, 467 Mass. 421, 428 (2014).

In this case, the Cooks' mortgage contained a power of sale and authorized the mortgagee to exercise it only upon certain conditions precedent. Specifically, paragraph 9 of the mortgage expressly preconditioned acceleration and foreclosure on compliance with HUD regulations. Where such regulations have been incorporated into the mortgage, compliance with the regulations has been held to be a condition precedent to foreclosure of FHA-insured mortgages. See, e.g., Pfeifer v. Countrywide Home Loans, Inc., 211 Cal. App. 4th 1250, 1255 (2012); Lacy-McKinney v. Taylor, Bean & Whitaker Mort. Corp., 937 N.E.2d 853, 864 (Ind. Ct. App. 2010); Wells Fargo Home Mort., Inc. v. Neal, 398 Md. 705, 721-728 (2007); Mathews v. PHH Mort. Corp., 283 Va. 723, 736-737 (2012). Accordingly, courts

have specifically held the "face-to-face meeting requirement [to be] a condition precedent to the accrual of the rights of acceleration and foreclosure incorporated into" the operative instrument. Id. at 736. See Pfeifer v. Countrywide Home Loans, Inc., supra at 1268, 1277-1278. We concur.

a. The judge's failure to consider the HUD Handbook. The Cooks first contend that the judge erred in refusing to consider the HUD Handbook as interpretive guidance when construing 24 C.F.R. § 203.604(b). We agree. Although the HUD Handbook is not binding on the court, it is relevant interpretive guidance that should be used when construing the HUD regulations. See Global NAPs, Inc. v. Awiszus, 457 Mass. 489, 496-497 (2010) ("[T]he [Massachusetts Commission Against Discrimination] Guidelines . . . are entitled to substantial deference, [but] they do not carry the force of law"). Indeed, Federal and State courts have routinely considered HUD handbooks when interpreting HUD regulations. See, e.g., Burroughs v. Hills, 741 F.2d 1525, 1529 (7th Cir. 1984) (HUD handbook not binding on court "but is entitled to notice so far as it is an official interpretation of statutes or regulations with which it is not in conflict" [citation omitted]); Kolbe v. BAC Home Loans Servicing, LP, 738 F.3d 432, 449-451 & n.18 (1st Cir. 2013); Wells Fargo Bank, N.A. v. Goebel, 2015-Ohio-38, at ¶ 30 (Ct. App. 2015); Squire v. Virginia Hous. Dev. Authy., 287 Va. 507, 516-517 (2014).

Because the HUD Handbook does not conflict with the plain language of the HUD regulations, we conclude that the judge erred in declining to consider it as persuasive interpretive guidance when construing the face-to-face interview requirement set forth in 24 C.F.R. § 203.604(b).

b. The face-to-face interview requirements. We conclude that the Gillette Stadium meeting was not timely even though it occurred before expiration of the fifteen-day grace period (set out in the note) for the August, 2012, mortgage payment.[8] Pursuant to 24 C.F.R. § 203.604(b), the face-to-face meeting between mortgagor and mortgagee must take place "before three full monthly installments due on the mortgage are unpaid." The Cooks' note provides that payment is due "on the first day of each month." This language unambiguously indicates that a payment is "unpaid" if it is not received on or before the first of the month. Moreover, although we need not rely on the HUD Handbook to reach that conclusion, our interpretation is consistent with the handbook, which provides that face-to-face interviews must be held "[n]o later than the 62nd day of

---

[8] In concluding that the meeting was timely, the judge relied on the grace period provision in the note, which provides, "[i]f Lender has not received the full monthly payment . . . by the end of fifteen calendar days after the payment is due, Lender may collect a late charge . . . ."

delinquency."[9]  HUD Handbook, par. 7-7(C).  Accordingly, we conclude that Wells Fargo was required to hold a face-to-face interview with the Cooks by August 3, 2008, at the very latest, and thus, the August 12, 2008, meeting at Gillette Stadium was untimely.

Untimeliness alone, however, is not dispositive of the summary judgment question here.  A delay of a few days, for example, followed by a face-to-face meeting in conformance with the regulations, with no resulting demonstrated prejudice to the mortgagors, would not be sufficient to defeat summary judgment.  Cf. Rivas v. Chelsea Hous. Authy., 464 Mass. 329, 337 (2013) (requiring a demonstration of prejudice arising from an agency's disregard of its rules); PNC Mort. v. Garland, 2014-Ohio-1173, at ¶ 30 (Ct. App. 2014) (describing the "specific time deadlines" set out in the HUD regulations as "aspirational," whereas the obligation to perform the face-to-face meeting prior to foreclosure is "mandatory").  A late face-to-face meeting, such as the one that occurred here, would, nonetheless, have to consider and address the consequences of the delayed meeting on the borrower in order to satisfy the regulatory requirements.  Here, however, it is difficult to identify any prejudice arising

_____

[9] As further described in the HUD Handbook, "[w]hen a payment is not made on or before its due date, the account is considered delinquent" (emphasis supplied).  HUD Handbook, par. 7-2(C).  "Payments on insured mortgages are always due on the first day of the month."  Id. par. 7-2(A).

from the time delay between August 3 and August 12, 2008, as the grace period for the August payment had not expired when the Gillette Stadium meeting took place.[10]

Regardless, we agree with the Cooks that summary judgment should not have been allowed as there are material disputed facts regarding whether the substantive elements of the face-to-face meeting requirement set out in the regulations at 24 C.F.R. § 203.604(b) were satisfied by the Gillette Stadium event here. The HUD Handbook makes clear that representatives conducting the face-to-face interview must "have the authority to propose and accept reasonable repayment plans . . . [because] [t]he interview has little value if the mortgagee's representative must take proposals back to a superior for a decision." HUD Handbook, par. 7-7(C)(3). Here, the Cooks state that the

---

[10] We also decline to adopt the suggestion raised in the briefing in this case that the regulatory deadline if missed prevents a lender thereafter from ever conducting a lawful foreclosure sale. We recognize that the regulations impose an obligation for a timely face-to-face meeting shortly following the initial default in part to assure that it will occur before the amount of the arrearage (including penalties and interest) grows so large that it might impede as a practical matter any realistic prospect of loan restructuring. That being said, the regulations obviously do not state or require that the deadline specified in the regulations, once missed, could never again be met thereby forever precluding the lender from accelerating the loan or exercising its right of foreclosure. Even the Cooks recognize that a lender who misses the three-payment window in which to conduct the face-to-face meeting still "has a viable path to foreclosure . . . [by] giving the borrower an opportunity to access loss mitigation services that she should have been offered through a face-to-face meeting."

representative told them he was not able to accept payments at the event, nor did the representative propose a loss mitigation solution at the meeting.  They therefore contend the Wells Fargo representative "was unable [to] propose or accept any forbearance or modification options, or arrange a payment plan." Wells Fargo disputes this claim, and suggests that a loss mitigation plan did eventually "result" from the meeting.  On this record, the question whether the representative had sufficient authority, and whether the agreement resulted from the meeting, are determinations properly left to the fact finder.  Moreover, a recurring theme throughout the regulations and HUD Handbook is that face-to-face interviews should involve personalized consideration of the mortgagors.  See 24 C.F.R. § 203.600 (2008) ("Collection techniques must be adapted to individual differences in mortgagors and take account of the circumstances peculiar to each mortgagor"); HUD Handbook, pars. 7-1, 7-3, & 7-4.  See also Lacy-McKinney v. Taylor, Bean & Whitaker Mort. Corp., 937 N.E.2d at 860.  No such personalized consideration appears to have taken place during the fifteen minutes allotted to the Cooks at the stadium event, or at least on the present summary judgment record it is not established beyond factual dispute that any did.[11]

_____

[11] The same appears to be true for the "Home Preservation Workshop" held on August 24, 2011.  See note 4, supra.

c.  The statutory power of sale.  Wells Fargo also argues that even if it did not conduct a timely face-to-face meeting with the Cooks, such noncompliance would not as a matter of law render a foreclosure sale void, that a standard of less than strict compliance should be applied, and that summary judgment thus would still be appropriate.  We disagree.  Pursuant to G. L. c. 183, § 21, a mortgagee may only sell mortgaged premises by public auction after default if it "first compl[ies] with the terms of the mortgage and with the statutes relating to the foreclosure of mortgages by the exercise of a power of sale" (emphasis supplied).  See U.S. Bank Natl. Assn. v. Schumacher, 467 Mass. at 430.  See also Mathews v. PHH Mort. Corp., 283 Va. at 736 ("face-to-face meeting requirement is a condition precedent to the accrual of the rights of acceleration and foreclosure incorporated into" the governing instrument); Lacy-McKinney v. Taylor, Bean & Whitaker Mort. Corp., 937 N.E.2d at 864.  Indeed, it has long been recognized that "one who sells under a power [of sale] must follow strictly its terms," and the failure to do so renders the foreclosure void.  U.S. Bank Natl. Assn. v. Ibanez, 458 Mass. 637, 646 (2011), quoting from Moore v. Dick, 187 Mass. 207, 211 (1905).  See Eaton v. Federal Natl. Mort. Assn., 462 Mass. 569, 580-581 (2012).  Here, the HUD regulations were specifically incorporated into the mortgage. Accordingly, Wells Fargo was required to comply with the HUD

regulations as terms of the mortgage before obtaining the authority to foreclose pursuant to the statutory power of sale.

We reject Wells Fargo's contention that the Supreme Judicial Court decision in U.S. Bank Natl. Assn. v. Schumacher, supra, requires a different result.  In Schumacher, the court rejected the mortgagors' attempt to "engraft the required notice provisions of [G. L. c. 244,] § 35A[,] onto the power of sale" as "one of the statutes 'relating to the foreclosure of mortgages by the exercise of a power of sale.'"  467 Mass. at 430, quoting from G. L. c. 183, § 21.  In Schumacher, § 35A was not incorporated into the terms of the mortgage.  Also, the court concluded that § 35A is not a statute "relating to the foreclosure of mortgages," because it instead involves a "preforeclosure undertaking" (the homeowner's right to cure a default).  Id. at 431.  Here, the Cooks do not claim that the HUD regulations should be considered a statute "relating to the foreclosure of mortgages," but rather, that the HUD regulations are express terms of the mortgage and thus fall under the first clause of § 21 (requiring compliance "with the terms of the mortgage").  We agree.  In sum, we reject Wells Fargo's argument that it would still be entitled to summary judgment even where material issues of disputed facts exist, as they do here, regarding its compliance with HUD's face-to-face meeting requirement.

3.  <u>Conclusion</u>.  The judgment of summary process in favor of Wells Fargo is vacated.  We remand the matter to the Boston Housing Court for further proceedings consistent with this opinion.

<u>So ordered</u>.