NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

15-P-835                                          Appeals Court

             TOMAS JOSE  vs.  WELLS FARGO BANK, N.A.

                        No. 15-P-835.

          Essex.      May 6, 2016. - July 22, 2016.

           Present:  Cohen, Green, & Hanlon, JJ.


Mortgage, Foreclosure.  Real Property, Mortgage.  Administrative
     Law, Agency's interpretation of regulation.



     Civil action commenced in the Superior Court Department on
March 5, 2012.

     The case was heard by Thomas Drechsler, J., on a motion for
summary judgment.


     Thomas J. Gleason for the plaintiff.
     David Fialkow for the defendant.


     GREEN, J.  Regulations promulgated by the Federal

Department of Housing and Urban Development (HUD) require a

mortgage lender to conduct a face-to-face meeting with

defaulting borrowers before foreclosing on certain federally

insured mortgages.  The defendant, Wells Fargo Bank, N.A.,

(Wells Fargo), acknowledges that failure to comply with those

regulations may serve as a basis to invalidate its foreclosure of the mortgage it held on the plaintiff's property, but asserts that it qualifies for an exemption.  We conclude that Wells Fargo does not qualify for the exemption from the face-to-face meeting requirement, and reverse so much of the judgment as dismissed that part of the plaintiff's complaint.

Background.  On March 28, 2005, the plaintiff, Tomas Jose, executed a promissory note in the amount of $440,002 to refinance a prior mortgage loan on 499 Boston Street in Lynn (property).  To secure the note, Jose granted a mortgage (mortgage) to Mortgage Electronic Registration Systems, Inc. (MERS), solely as nominee for the lender and the lender's successors and assigns.  The mortgage was insured by the Federal Housing Administration, and incorporated applicable HUD regulations by reference.  More specifically, under par. 9(d) of the mortgage, acceleration or foreclosure of the mortgage is not authorized "if not permitted by regulations of the [HUD] Secretary."  On February 4, 2009, MERS assigned the mortgage to Wells Fargo.  At all relevant times, Wells Fargo serviced Jose's mortgage loan.  Wells Fargo does not maintain a servicing branch within 200 miles of the property.  However, Wells Fargo does maintain deposit and home loan origination branch offices within 200 miles of the property.  Wells Fargo never scheduled or

conducted a face-to-face meeting with Jose to discuss an alternative to foreclosure.

Despite the absence of a face-to-face meeting, however, Wells Fargo and Jose entered into several forbearance agreements and three permanent modifications. Jose breached each of those agreements. Additionally, while in default, Jose twice filed for bankruptcy to avoid foreclosure. Wells Fargo eventually obtained relief from the bankruptcy court's automatic stay so that it could foreclose on the property.[1]

On February 28, 2012, shortly before a scheduled foreclosure sale, Jose called Wells Fargo to request a fourth loan modification. Wells Fargo told Jose that because the foreclosure sale was scheduled a few days later, he should submit an application and supporting documents for his requested modification "ASAP." Jose submitted the application and supporting documents that same day. Wells Fargo did not approve a further loan modification and, on March 5, 2012, Wells Fargo conducted a foreclosure sale. Wells Fargo was the high bidder at the foreclosure.

Jose commenced this action by complaint filed on March 5, 2012, the day of the foreclosure. After Wells Fargo filed its

---

[1] On March 7, 2012, Jose received a discharge pursuant to Chapter 7 of the United States Bankruptcy Code, thereby discharging his personal obligation under the mortgage loan.

answer to that complaint, Jose moved successfully to file an amended complaint. In his amended complaint, Jose alleged breach of the covenant of good faith and fair dealing (count 1), breach of contract (count 2), and violation of G. L. c. 93A (count 3). Count 2 and the portion of count 3 relying on count 2 center on Jose's contention that Wells Fargo's failure to conduct a face-to-face meeting with him prior to the foreclosure rendered its foreclosure of the mortgage invalid. Wells Fargo moved for summary judgment and, after a hearing, a judge of the Superior Court allowed the motion. Judgment entered thereafter, dismissing the complaint. Jose appeals.[2]

Discussion. Though Wells Fargo argued in the Superior Court that noncompliance with applicable HUD regulations would not invalidate a foreclosure unless the nature of the noncompliance rendered the foreclosure fundamentally unfair, it has abandoned that argument on appeal in light of Pinti v. Emigrant Mort. Co., 472 Mass. 226 (2015), and Wells Fargo Bank,

---

[2] Jose has waived appeal from the dismissal of count 1 and so much of the c. 93A claim as rests upon count 1. Although Wells Fargo does not argue the point, we note that Jose's appeal, filed after the judge's order entered on the docket, but before judgment entered, was technically premature. See Mass.R.A.P. 4(a), as amended, 430 Mass. 1603 (1999). However, as no motion was brought pursuant to the second par. of rule 4(a), Jose's misstep does not bar his appeal. See Hodge v. Klug, 33 Mass. App. Ct. 746, 750-751 (1992).

N.A. v. Cook, 87 Mass. App. Ct. 382 (2015).[3]  Instead, it presses its argument that the requirement for a face-to-face meeting is inapplicable in the present case, by reason of an exemption.

Pursuant to 24 C.F.R. § 203.604(b) (2015), a "mortgagee must have a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid.  If default occurs in a repayment plan arranged other than during a personal interview, the mortgagee must have a face-to-face meeting with the mortgagor, or make a reasonable attempt to arrange such a meeting within 30 days after such default and at least 30 days before foreclosure is commenced . . . ."  However, "[a] face-to-face meeting is not required if . . . [t]he mortgaged property is not within 200 miles of the mortgagee, its servicer, or a branch office of either."  24 C.F.R. § 203.604(c) (2015).

In arguing that it qualifies for the exemption from the face-to-face meeting requirement, Wells Fargo points to a document which, it claims, appeared at the time of the foreclosure in a section of HUD's Web site providing answers to

---

[3] Pinti held that terms of the mortgage relating to the mortgagee's exercise of the power of sale must be strictly complied with.  See 472 Mass. at 240.  Cook in turn held that the terms of the mortgage include terms of regulations incorporated by reference into the mortgage (specifically including the HUD regulatory requirement for a face-to-face meeting).  87 Mass. App. Ct. at 386.

"frequently asked questions" (FAQ).[4]  In it, HUD responded to the following question:  "Please clarify HUD's requirement to conduct a face-to-face meeting with a delinquent mortgagor. This is often impossible as many mortgagees maintain only one centralized servicing office."  HUD replied:

> "The Department is aware that many Mortgagees maintain 'branch offices' that deal only with loan origination and some of these offices may only be staffed part-time.  For the most part, individuals that staff an origination office are not familiar with servicing issues and are not trained in debt collection or HUD's Loss Mitigation Program.
>
> "The Department has always considered that the face-to-face meeting must be conducted by staff that is adequately trained to discuss the delinquency and the appropriate loss mitigation options with the mortgagor.  Therefore, for the purpose of this discussion, the face-to-face meeting requirement referenced in 24 C.F.R. 203.604 relates only to those mortgagors living within a 200-mile radius of a servicing office."

Observing that courts should defer to an agency's interpretation of its own regulation when the regulation is unclear and the agency's interpretation is reasonable, see Christensen v. Harris County, 529 U.S. 576, 588 (2000), Wells

---

[4] The document, which is undated and lacks a Web address, appears in the summary judgment record as an exhibit to an affidavit of counsel for Wells Fargo attesting that it was copied from the HUD FAQ Web site.  However, the record does not establish when it was posted, or for how long.  Because the plaintiff does not contest the provenance of the document or its existence at the time of the foreclosure, we nevertheless consider it.  We note that a reference to the identical FAQ, and response, appears in Mathews v. PHH Mort. Corp., 283 Va. 723, 737 (2012), with a notation that it was last visited Mar. 12, 2012.

Fargo argues (and the motion judge agreed) that it is exempt from the face-to-face meeting requirement because it maintains no servicing offices within 200 miles of the property.

We are unaware of any Massachusetts appellate authority on the question of regulatory interpretation presented in the present case, and the parties have directed us to none. However, the question has been considered by appellate courts in several other jurisdictions, and in each instance those courts have rejected the interpretation pressed by Wells Fargo.  See, e.g., Lacy-McKinney v. Taylor, Bean & Whitaker Mort. Corp., 937 N.E.2d 853, 866 (Ind. Ct. App. 2010); Wells Fargo v. Phillabaum, 192 Ohio App. 3d 712, 716 (2011); Mathews v. PHH Mort. Corp., 283 Va. 723, 738-739 (2012).[5]

A reading of the plain language of the regulation reveals both that it is not ambiguous and that the quoted HUD response to the FAQ is inconsistent with the regulation.  As the exemption states, it applies where the property "is not within 200 miles of the mortgagee, its servicer, or a branch office of either" (emphasis added).  24 C.F.R. § 203.604(c).  By recognizing the mortgagee and its servicer as separate and

_____

[5] In RBS Citizens, NA v. Sharp, 2015-Ohio-5438, at ¶¶ 16-17 (Ct. App. 2015), the court (citing opinions from three other Ohio appellate districts) described as "the established law in Ohio" the determination that the term "branch office" as used in the exemption refers to any branch office of the mortgagee, and not just a servicing branch.

distinct, and then referring to branch offices of either in the disjunctive, the regulation makes plain that a branch office, for purposes of determining whether the exemption applies, includes a branch office of the mortgagee, and not simply that of its servicer.  It also contains no language of limitation regarding the type of branch office of the mortgagee.  Moreover, the FAQ itself acknowledges that "[t]he Department is aware that many Mortgagees maintain 'branch offices' that deal only with loan origination," thereby recognizing that the term "branch office" includes offices of the mortgagee other than servicing offices.[6]

While Wells Fargo is correct that we should defer to an agency's interpretation of its own regulation when the regulation is unclear, "Auer[7] deference is warranted only when the language is ambiguous."  Christensen v. Harris County, 529 U.S. at 588.  "To defer to an agency's interpretation when the regulation itself is unambiguous 'would be to permit the agency, under the guise of interpreting a regulation, to create de facto

_____

[6] The National Bank Act defines a banking "branch" as "any branch bank, branch office, branch agency, additional office, or any branch place of business located in any State or Territory of the United States or in the District of Columbia at which deposits are received, or checks paid, or money lent."  12 U.S.C. § 36(j) (2012).

[7] See Auer v. Robbins, 519 U.S. 452 (1997).

a new regulation.'"  Mathews v. PHH Mort. Corp., 283 Va. at 739,

quoting from Christensen, supra.[8,9]

_____

   [8] In its brief, Wells Fargo acknowledges that "some other courts have declined to defer to HUD's interpretation of 'branch office,'" but suggests that the decisions "that have deferred to HUD are better reasoned and correctly decided."  Examination of the cases Wells Fargo cites suggests otherwise.  In Nationstar Mort. LLC v. Covert, 2015-Ohio-3757, at ¶ 40 (Ct. App. 2015), the opinion observes, without analysis, that the lender's witness testified that it did not have a servicing branch located within 200 miles of the property, and that no evidence was presented in opposition.  The question whether a branch office other than a servicing branch would render the exemption inapplicable does not appear to have been engaged.  As we have observed, see note 5, supra, a case decided by another Ohio appellate court later that year described as "established law in Ohio" that the term refers to any branch office of the mortgagee.  In Montalvo v. Bank of America Corp., 864 F. Supp. 2d 567, 593 (W.D. Tex. 2012), a Federal magistrate judge observed, without further analysis, that "[t]he defendants presented summary-judgment evidence that the lender 'did not operate a servicing center within a 200-mile radius [of the mortgaged property] that was staffed with employees familiar with servicing issues....'  This evidence shows the exception applies."  Finally, in Mitchell vs. Chase Home Fin. LLC, U.S. Dist. Ct., No. 3:06-CV-2099-K, slip op. at 7-8 (N.D. Tex. Mar. 4, 2008), an unpublished decision, the opinion simply observes (again without analysis) that "[o]n its website, HUD states that a mortgagee must have a face-to-face meeting with a delinquent mortgagor, or make a reasonable effort to arrange such a meeting, before three monthly installments due on the mortgage are unpaid.  According to HUD, such a meeting must be conducted by personnel who are adequately trained to discuss the delinquency and appropriate loss mitigation options with the mortgagor.  Recognizing that not all of a lender's branch offices are staffed with such personnel, HUD states that this requirement does not apply where the mortgagor does not live within a 200 mile radius of a servicing office."  While Wells Fargo's belief that the cases it cites were correctly decided is perhaps understandable (because they may be read to endorse the position it advocates), by no means can they fairly be described as "better reasoned" when compared to the opinions that reach the contrary conclusion.

We likewise reject Wells Fargo's alternative contention that interpreting the exemption as limiting its reference to a "branch office" of the mortgagee to servicing branches only is necessary to avoid an absurd result.  See, e.g., <u>United States v. Turkette</u>, 452 U.S. 576, 580 (1981).  In support of its argument, Wells Fargo cites our opinion in <u>Wells Fargo Bank, N.A</u>. v. <u>Cook</u>, 87 Mass. App. Ct. at 388, quoting from HUD Handbook No. 4330.1 REV-5, Administration of Insured Home Mortgages (1994), par. 7-7(C)(3) ("representatives conducting the face-to-face interview must 'have the authority to propose and accept reasonable repayment plans . . . [because] [t]he interview has little value if the mortgagee's representative must take proposals back to a superior for a decision'").  Since only servicing branches are staffed by personnel with training

---

[9] In declining to accept the FAQ response cited by Wells Fargo, we are also mindful that HUD itself appears no longer (at least as of January 7, 2016) to hold its former position.  See HUD's "General Servicing Frequently Asked Questions" (FAQ 2) at http://www.lb5.uscourts.gov/OpinionsCitingWeb/Files/14-40931/14-40931(1).pdf [https://perma.cc/PD9V-4CUC].  We note that, like the FAQ cited by Wells Fargo (see note 4, <u>supra</u>), it is impossible to determine when FAQ 2 appeared on the HUD Web site.  However, we also note that FAQ 2 itself references other documents from as late as 2014.  We therefore infer that FAQ 2 postdates the FAQ cited by Wells Fargo.  FAQ 2 recites the language of the regulation, and simply states that the exemption applies when "[t]here is no office or branch office of the mortgagee or servicer within 200 miles of the mortgaged property."  So far as we are able to ascertain, no FAQ page addressing the same or similar topics currently appears on the HUD Web site.

and authority to conduct such face-to-face meetings, Wells Fargo reasons, it would be absurd and at odds with the regulatory purpose to conclude that the exemption does not apply if its only branches within 200 miles of the property are staffed for loan origination and not for servicing.  The argument is circular, as it is of course open to Wells Fargo to send trained modification personnel to branches (or other locations) in markets in which it conducts loan origination business.[10] Indeed, in Wells Fargo Bank, N.A. v. Cook, supra, one of the factual disputes centered on Wells Fargo's contention that the representative it sent to discuss loan modification with the plaintiffs in Massachusetts was qualified and authorized to do so.  87 Mass. App. Ct. at 388-389.

In sum, we conclude that because Wells Fargo maintains loan origination branches within 200 miles of the property at issue in the present case, the exemption to the face-to-face meeting requirement created by 24 C.F.R. § 203.604(c) is inapplicable to the present case.  It follows that the motion judge erred in

---

[10] We express no view on the question whether a videoconference would satisfy the regulatory requirement for a face-to-face meeting.  See Mathews v. PHH Mort. Corp., 283 Va. at 740-741.

allowing Wells Fargo's motion for summary judgment on count 2 and so much of count 3 as rested on count 2.[11]

Conclusion. So much of the judgment as dismisses count 1 and the portion of count 3 resting on count 1 of the complaint is affirmed. In all other respects, the judgment is reversed, and the matter is remanded to the Superior Court for further proceedings consistent with this opinion.[12]

So ordered.

---

[11] Because the motion judge partly rested his order allowing summary judgment on the plaintiff's claim under G. L. c. 93A on his conclusion that Wells Fargo was not required to hold a face-to-face meeting before conducting its foreclosure, that portion of the order was likewise in error.

[12] Among other questions to be addressed in further proceedings is whether the failure to conduct a face-to-face meeting caused any prejudice and, if so, what remedy should follow. See Wells Fargo Bank, N.A. v. Cook, 87 Mass. App. Ct. at 387 & n.10.